UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Damareion McKizzie,

        Plaintiff,

**COMPLAINT**

**(JURY TRIAL DEMANDED)**

v.

City of Minneapolis, a municipal entity,
Officer William Gregory, in his individual
capacity as a Minneapolis police officer, and
John Does 1, 2, 3, and 4,

        Defendants.

---

## INTRODUCTION

1.     This is a civil rights action for money damages pursuant to Title 42 U.S.C. § 1983. On March 24, 2021, Defendants willfully and intentionally deprived Plaintiff of his rights secured by United States Constitution and laws thereunder, by using unreasonable, unjustified amounts of force, and subjecting Plaintiff to prolonged continued detention without probable case.

## JURISDICTION AND VENUE

2.Plaintiff Damareion McKizzie bases his claim on Title 42 U.S.C. § 1983. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983, 1988.

3.Venue in this Court is appropriate pursuant to Title 28 U.S.C § 1391(b), because all incidents, events, and occurrences giving rise to this action occurred in the District of Minnesota. Moreover, upon information and belief, all of the parties reside in this judicial district.

4.At all times relevant to this Complaint, Defendants acted under color of state law and in the scope of their official duties, as within the meaning of Title 42 U.S.C. § 1983.

## PARTIES

5.Damareion McKizzie is a resident of the City of Minneapolis, in Hennepin County, Minnesota.

6.Defendant City of Minneapolis (hereinafter "Minneapolis" or the "City") is a political subdivision of the State of Minnesota, and supervises the Minneapolis Police Department, which is the vehicle through which the City fulfills its policing functions.

7.Defendant Officer William Gregory (hereinafter "Gregory") is and was at all times material hereto employed by the MPD as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

8. Defendants John Does 1, 2, 3 and 4 are other officers involved in the violation of Plaintiff's civil rights whose names will be added when their identities are confirmed through discovery.

9. At all times relevant to this Complaint, Defendants acted under the color of state law and in the scope of their official duties, as within the meaning of Title 42 U.S.C. §§ 1983.

## FACTUAL BACKGROUND

10. On the afternoon of March 24, 2021 around 4 p.m., Minneapolis Police Department ("MPD") officers were dispatched to the 3200 block of James Ave. N., Minneapolis, MN to assist in apprehending carjacking suspects.

11. Damareion McKizzie, who was 17 years old at the time, was working out in a gym near the intersection when the officers arrived.

12. McKizzie heard the commotion, left the gym, and attempted to cross the street to see what was happening.

13. Before McKizzie could make his way across the street, an officer believed to be Defendant Gregory blocked his path and stood in his way.

14. McKizzie stopped walking and put his hands at his side.

15. Officer Gregory violently shoved McKizzie, knocking him off balance. McKizzie did not react, and put his arms at his sides and stood still.



16. While McKizzie's hands were at his side and with McKizzie still not moving, other officers began grabbing McKizzie's shirt and pulling him in different directions.

17. While McKizzie was being pulled in different directions, Officer Gregory ran at McKizzie from behind and threw a violent punch at the back of McKizzie's head:



4

18.     Gregory, who has six complaints on his record and no reprimands, then punched McKizzie in the face, before throwing him violently to the ground.



19.     The other officers assisted in taking McKizzie to the ground and restraining him while he laid completely still.

20.     While McKizzie was on the ground, Officer Gregory continued to punch McKizzie in the back of the head. The other officers present allowed Gregory to continue the beating.

 

21.     McKizzie was held to the ground for several minutes by four officers, before he was handcuffed and thrown into the back of a police squad car.

22.     McKizzie was not told what he had done or why he was being detained.

23.     At 4:23 p.m., the officers put McKizzie in the squad car, and drove him to the end of a dead-end street, where they arrived at approximately at 4:40 p.m. At this point, an officer asked McKizzie if he had suffered any injuries, to which McKizzie answered yes.

24.     At 4:42, in response to an officer believed to be Officer Nicholas Englund's questions regarding his injuries, McKizzie responded, "I want to get dropped off somewhere."

25.     An officer believed to be officer Englund, then indicated to the officer driving the squad car that he was not sure what to do with McKizzie, but that the Officer should take him over to "juvenile." At approximately 4:47 p.m., the officer left the dead-end street with McKizzie in the squad car, still handcuffed, to take him to the Hennepin County Juvenile Detention Center, a secure 24-hour detention facility for juveniles who have been arrested and are waiting for court disposition or placement.

26.     They arrived at the center around 5:03 p.m., at which point they kept McKizzie in the back of the squad car, detained in handcuffs, awaiting an ambulance which one of the officer had apparently called.

27.     At approximately 5:07, the ambulance arrived. Around 5:19 p.m., the officers brought McKizzie into the Juvenile Detention Center facility and put him into the fingerprinting and booking room. All the while McKizzie remained handcuffed.

28. The officers kept McKizzie detained in the Juvenile Detention Center until approximately 5:37 p.m., at which point, the officers forcibly escorted McKizzie back to the parking garage at the Juvenile Detention Center, putting him back into the squad car, where he remained handcuffed.

29. At approximately 6:03 p.m., the officers took McKizzie out of the squad car, and strapped him to a medical gurney, using two sets of handcuffs rather than one, and strapping multiple layers of polyester webbing over his body.



30. All the while McKizzie remained compliant, made no effort to break the officers' restraints, continued to ask why he was being detained, and continued to request to be released.

31. McKizzie remained in the hospital, still in police custody, for approximately 30 minutes. At approximately 6:30 p.m., the officers wheeled McKizzie out of the hospital, unstrapped him from the gurney, reapplied the handcuffs, put him in the back of a squad car, and drove him back to the juvenile detention center.

32. Upon arrival at the juvenile detention center, McKizzie was uncuffed for the first time. The officers left, and shortly after, McKizzie's mother arrived to pick him up.

33.     McKizzie was never charged.

## CLAIMS FOR RELIEF

### COUNT I – 42 U.S.C. § 1983 & the 4th Amendment to the U.S. Constitution – Excessive Force / Unreasonable Search & Seizure

*Plaintiff v. Gregory and John Does 1, 2, 3, and 4, Individually and in Their Official Capacities*

34.     The foregoing paragraphs are incorporated by reference as though fully stated herein.

35.     Title 42 U.S.C. § 1983 prohibits, *inter alia*, state actors from depriving persons of any rights, privileges, or immunities secured by the United States Constitution, including the right to be free from excessive force, unreasonable search and seizures, and unlawful arrest as guaranteed by the Fourth Amendment and incorporated through the Fourteenth Amendment. This right was clearly established at the time of Mr. McKizzie's encounter with police on March 24, 2021.

36.     The right to be free from excessive force during an encounter is clearly established and that right was violated.

37.     In violation of 42 U.S.C. § 1983, Defendants deprived Mr. McKizzie of his right to be free from excessive force and unreasonable search and seizure when he was unreasonably searched, made the subject of excessive force, and unlawfully arrested, without probable cause or any legal justification.

38.     At the time that Defendant Officer Gregory and the other accompanying officers struck Plaintiff in the face and body, Plaintiff posed no threat to the safety of the Defendant officers, no threat to his own safety, and no threat to any others.

39. The Defendants' actions were not objectively reasonable under the Fourth Amendment or for purposes of qualified immunity under the totality of circumstances.

40. At all material times, Defendant Gregory was acting under color of state law, as an agent of Minneapolis, and within the scope of his employment and authority as a duly-certified law enforcement officer of the City of Minneapolis.

41. Defendants, individually and/or through their agents, violated Plaintiff's civil rights under the Fourth Amendment of the United States Constitution and 42 U.S.C.A § 1983 by beating Plaintiff, a 17-year old at the time.

42. As a direct and proximate result of the Defendants' actions, Mr. McKizzie has been injured, suffering physical, mental and emotional pain, discomfort, embarrassment, professional humiliation, fear, anxiety, apprehension, sleeplessness, a generally diminished sense of personal and family safety, outrage, attorney and investigative fees to defend against criminal prosecution, civil attorney fees, and the costs of bringing suit.

43. Plaintiff is entitled to recover actual damages, punitive damages, and costs and attorneys' fees.

44. Total damages suffered by Mr. McKizzie are in excess of $75,000, to be further determined at trial.

### COUNT II – 42 U.S.C. §1983 & the 4th Amendment to the U.S. Constitution – False Imprisonment / Unlawful Continued Detention

*Plaintiff v. Gregory and John Does 1, 2, 3, and 4, Individually and in Their Official Capacities*

45. Plaintiff realleges the allegations contained in the paragraphs above as if more fully set forth here.

46.     Defendants, individually and/or through their agents, violated Plaintiff's civil rights under the Fourth Amendment of the United States Constitution and 42 U.S.C.A. §1983 by falsely imprisoning him without consent and unnecessarily delayed releasing Plaintiff.

47.     Defendant City's failure to train its officers on the Fourth Amendment caused the deprivation of Plaintiff's right to be free from unreasonable seizures. Plaintiff's false imprisonment was a direct result of order from a supervised Sergeant.

48.     The actions of Defendants represented callous indifference to the rights of Plaintiff.

49.     As a result of this constitutional violation, Plaintiff suffered damages described above.

50.     Plaintiff is entitled to recover actual damages, punitive damages, and costs and attorneys' fees.

51.     Total damages suffered by Mr. McKizzie are in excess of $75,000, to be further determined at trial.

### COUNT III – 42 U.S.C. §1983 – *Monell* Liability

*Plaintiff v. City of Minneapolis*

52.     The foregoing paragraphs are incorporated by reference as though fully stated herein.

53.     MPD's Policy Manual provides that the Mayor is "vested with all the powers of said city connected with and incident to the establishment, maintenance, appointment, removal, discipline, control and supervision of its police force, subject to the limitations

herein contained and the provisions of the Civil Service chapter of this Charter, and may make all needful rules and regulations for the efficiency and discipline, and promulgate and enforce general and special orders for the government of the same, and have the care and custody of all public property connected with the Police Department of the city."

54.     The Mayor, the City Council, and the Police Chief established and/or approved MPD's written policies and training governing the conduct of MPD officers performing policing functions.

55.     The written policies and training established and/or approved by The Mayor, the City Council, and the Police Chief constitute the official policy of the City and were the moving force behind and caused Plaintiff's injuries.

56.     The City, acting by and through its Mayor and/or policymakers, had knowledge of MPD's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal rights.

57.     The City, acting by and through its Mayor and/or other policymakers, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from MPD's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

58.     On or prior to March 24, 2021, Minneapolis, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety or arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

59. On or prior to March 24, 2021, Minneapolis, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by MPD officers.

60. Total damages suffered by Mr. McKizzie are in excess of $75,000, to be further determined at trial.

### COUNT IV – Common Law Battery

*Plaintiff v. Gregory and John Does 1, 2, 3, and 4, Individually and in Their Official Capacities*

61. The foregoing paragraphs are incorporated herein by reference.

62. Defendant Gregory and the John Doe Officers made offensive contact against Plaintiff, without consent or other lawful authority, in violation of his common law right to be free from offensive bodily contact or violation to the dignity and security of his person.

63. Defendant Gregory inflicted damages upon Plaintiff.

### COUNT V – Common Law Battery (*Respondeat Superior*)

*Plaintiff v. City of Minneapolis*

64. The foregoing paragraphs are incorporated herein by reference.

65. Defendant Gregory acted in the course and scope of his employment as a Minneapolis police officer.

66. Defendant City of Minneapolis is liable to Plaintiff for the common law tort of battery inflicted upon him by Defendant Gregory.

67. Defendant Gregory inflicted damages upon Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in its favor and against Defendants, jointly and severally, and for an Order from the Court providing as follows:

1. Adjudging Defendants liable to Plaintiff for his actual damages;

2. Awarding Plaintiff his costs, attorney's fees, and any other relief permitted by law;

3. Awarding injunctive relief preventing Defendants from continued violations; and

4. Awarding such other relief as the Court may deem just and equitable.

Date: October 13, 2021　　　　　　　　　　　　**GILBERT ALDEN BARBOSA PPLC**

　　　　　　　　　　　　　　　　　　　　　　By: /s/ *Charlie R. Alden*
　　　　　　　　　　　　　　　　　　　　　　Charlie R. Alden, Reg. No. 038989
　　　　　　　　　　　　　　　　　　　　　　2801 Cliff Rd E.
　　　　　　　　　　　　　　　　　　　　　　Suite 200
　　　　　　　　　　　　　　　　　　　　　　Burnsville, MN 55337
　　　　　　　　　　　　　　　　　　　　　　Charlie@GilbertAlden.com
　　　　　　　　　　　　　　　　　　　　　　612-990-2484 | Office & Cell
　　　　　　　　　　　　　　　　　　　　　　612-806-0585 | Fax

　　　　　　　　　　　　　　　　　　　　　　**ATTORNEYS FOR PLAINTIFF**