## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Damareion McKizzie, | |
| Plaintiff, | Case No. 21-cv-02265 (WMW/DTS) |
| vs. | |
| City of Minneapolis, a municipal entity, Officer William Gregory, in His individual capacity as a Minneapolis police officer, and John Does 1, 2, 3, and 4, | **DEFENDANTS' ANSWER** |
| | **JURY DEMAND** |
| Defendants. | |

TO:   Plaintiff above-named and his attorney of record, Charlie R. Alden, 2801 Cliff Road E., Suite 200, Burnsville, MN 55337.

Defendants for their Answer to Plaintiff's Complaint, state and allege as follows:  unless admitted, denied, or otherwise pleaded below, Defendants deny each and every matter, allegation and thing in Plaintiff's Complaint.

### INTRODUCTION

1.     This is a civil rights action for money damages pursuant to Title 42 U.S.C. § 1983.  On March 24, 2021, Defendants willfully and intentionally deprived Plaintiff of his rights secured by United States Constitution and laws thereunder, by using unreasonable, unjustified

1

amounts of force, and subjecting Plaintiff to prolonged continued detention without probable case.

**ANSWER:  Defendants deny the substantive allegations of the paragraph, and the other allegations are not factual allegations susceptible to confirming or denying.**

<u>**JURISDICTION AND VENUE**</u>

2.      Plaintiff Damareion McKizzie bases his claim on Title 42 U.S.C. § 1983. This Court has jurisdiction over federal questions pursuant to 28 U.S.C. §§ 1331 and 1343, and 42 U.S.C. §§ 1983, 1988.

**ANSWER: The  allegations in ¶ 2 are not factual allegations susceptible to confirming or denying.**

3.      Venue in this Court is appropriate pursuant to Title 28 U.S.C § 139l(b), because all incidents, events, and occurrences giving rise to this action occurred in the District of Minnesota. Moreover, upon information and belief, all of the parties reside in this judicial district.

**ANSWER:  The  allegations in ¶ 2 about venue are not factual allegations susceptible to confirming or denying. Defendants do not have sufficient information to confirm or deny the residency of the parties, so that allegation is denied.**

4.      At all times relevant to this Complaint, Defendants acted

under color of state law and in the scope of their official duties, as within the meaning of Title 42 U.S.C. § 1983.

**ANSWER:  Excepting the Doe defendant, about which Defendants do not have sufficient information to confirm or deny the allegation, Defendants admit the allegation.**

## PARTIES

5.      Damareion McKizzie is a resident of the City of Minneapolis, in HennepinCounty, Minnesota.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation in ¶ 5, so it is therefore denied.**

6.      Defendant City of Minneapolis (hereinafter "Minneapolis" or the "City") is a political subdivision of the State of Minnesota, and supervises the Minneapolis PoliceDepartment, which is the vehicle through which the City fulfills its policing functions.

**ANSWER:  Admit.**

7.      Defendant Officer William Gregory (hereinafter "Gregory") is and was at all timesmaterial hereto employed by the MPD as a duly appointed and sworn police officer and was acting in his individual capacity and/or under color of state law, and within the scope of his employment.

3

**ANSWER:  Admit.**

8.      Defendants John Does 1, 2, 3 and 4 are other officers involved in the violation of Plaintiff's civil rights whose names will be added when their identities are confirmed through discovery.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation in ¶ 8, so it is therefore denied.**

9.      At all times relevant to this Complaint, Defendants acted under the color of state law and in the scope of their official duties, as within the meaning of Title 42 U.S.C. §§ 1983.

**ANSWER:  Excepting the Doe defendant, about which Defendants do not have sufficient information to confirm or deny the allegation, Defendants admit the allegation.**

## FACTUAL BACKGROUND

10.      On the afternoon of March 24, 2021 around 4 p.m., Minneapolis Police Department ("MPD") officers were dispatched to the 3200 block of James Ave. N., Minneapolis, MN to assist in apprehending carjacking suspects.

**ANSWER:  Admit.**

11.      Damareion McKizzie, who was 17 years old at the time, was working out in a gym near the intersection when the officers arrived.

4

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation in ¶ 11, so it is therefore denied.**

12.     McKizzie heard the commotion, left the gym, and attempted to cross the street tosee what was happening.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation in ¶ 12, so it is therefore denied.**

13.     Before McKizzie could make his way across the street, an officer believed to beDefendant Gregory blocked his path and stood in his way.

**ANSWER:  Deny.**

14.     McKizzie stopped walking and put his hands at his side.

**ANSWER:  Deny. McKizzie was walking toward the area where an arrestee was being dealt with by officers, and an officer on the scene told McKizzie to stop and to proceed in another direction. McKizzie refused to follow the order kept walking, and bumped his chest and/or shoulder into the officer, who was basically standing still.**

15.     Officer Gregory violently shoved McKizzie, knocking him off balance. McKizziedid not react, and put his arms at his sides and stood still.

**ANSWER:  Deny. When Gregory saw McKizzie intentionally walk into the officer with an aggressive shoulder-check or chest bump, Gregory grabbed McKizzie's hooded sweatshirt and pull him away from the officer that McKizzie had ran in to.**

16.     While McKizzie's hands were at his side and with McKizzie still not moving, other officers began grabbing McKizzie's shirt and pulling him in different directions.

**ANSWER:  Deny.**

17.     While McKizzie was being pulled in different directions, Officer Gregory ran at McKizzie from behind and threw a violent punch at the back of McKizzie's head.

**ANSWER:  Deny. After Gregory pulled McKizzie away from the other officer, McKizzie clinched his fists, took an aggressive stance, and walked aggressively toward Gregory. Another officer said something to McKizzie, and McKizzie turned toward that officer, taking an aggressive stance and walking toward him aggressively. McKizzie was told he was under arrest. McKizzie retained his aggressive stance with clinched fists. Gregory grabbed McKizzie's right arm, and McKizzie began to struggle and pull away from Gregory. McKizzie raised his right arm with clinched fist in apparent attempt to strike the other officer. McKizzie**

6

**then broke free of Gregory's grasp. Fearful that McKizzie was going to strike the other officer, Gregory attempted to punch McKizzie. McKizzie evaded the punch and was not struck by Gregory.**

18.     Gregory, who has six complaints on his record and no reprimands, then punchedMcKizzie in the face, before throwing him violently to the ground.

**ANSWER:  Deny. Gregory did not make contact with any punch. After Gregory attempted to punch McKizzie but missed, Gregory grabbed McKizzie and took him to the ground. Before taking McKizzie to the ground, Greggory pulled McKizzie away from the sidewalk and onto the grass to prevent any injury to McKizzie.**

19.     The other officers assisted in taking McKizzie to the ground and restraining himwhile he laid completely still.

**ANSWER:  Deny that McKizzie laid completely still. After McKizzie was taken to the ground, he resisted the officers' efforts to handcuff him.**

20.     While McKizzie was on the ground, Officer Gregory continued to punch McKizzie in the back of the head. The other officers present allowed Gregory to continuethe beating.

**ANSWER: Deny. After McKizzie was taken to the ground, he resisted the officers' efforts to put his hands behind his back. As he resisted, his hands were near the back of his head. Gregory executed two or three stunning blows *to Gregory's hands*, not his head. These blows were roughly parallel to surface of McKizzie's head and any contact with his head was glancing and incidental.**

21.     McKizzie was held to the ground for several minutes by four officers, before hewas handcuffed and thrown into the back of a police squad car.

**ANSWER: Deny. Within approximately 60 seconds of being handcuffed, McKizzie was lifted off the ground and placed in a squad car.**

22.     McKizzie was not told what he had done or why he was being detained.

**ANSWER: Defendants do not have sufficient information to confirm or deny the allegation in ¶ 22, so it is therefore denied.**

23.     At 4:23 p.m., the officers put McKizzie in the squad car, and drove him to the endof a dead-end street, where they arrived at approximately at 4:40 p.m. At this point, an officer asked McKizzie if he had suffered any injuries, to which McKizzie answered yes.

8

**ANSWER:  The allegations in this paragraph mischaracterize the facts without necessary context—for that reason they are denied. McKizzie was transported to another location because the scene was volatile with a lot of hostile bystanders who were making it difficult for the officers to safely do their jobs. Once at the secondary location, McKizzie was checked for injuries, including photograph documentation.**

24.     At 4:42, in response to an officer believed to be Officer Nicholas Englund'squestions regarding his injuries, McKizzie responded, "I want to get dropped off somewhere."

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation as to timing, so it is therefore denied. Defendants note that McKizzie, a minor, gave the officers a false name and would not tell the officers how to contact one of his parents.**

25.     An officer believed to be officer Englund, then indicated to the officer driving thesquad car that he was not sure what to do with McKizzie, but that the Officer should take him over to "juvenile." At approximately 4:47 p.m., the officer left the dead-end street with McKizzie in the squad car, still handcuffed, to take him to the Hennepin County Juvenile Detention Center, a secure 24-hour detention facility for

9

juveniles who have been arrested and are waiting for court disposition or placement.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation, but do admit that they took McKizzie to a location at a downtown facility where officers with the department's juvenile division could help identify him because McKizzie had given the officers a false name.**

26.    They arrived at the center around 5:03 p.m., at which point they kept McKizzie in the back of the squad car, detained in handcuffs, awaiting an ambulance which one of the officer had apparently called.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation. It is therefore denied.**

27.    At approximately 5:07, the ambulance arrived. Around 5:19 p.m., the officers brought McKizzie into the Juvenile Detention Center facility and put him into the fingerprinting and booking room. All the while McKizzie remained handcuffed.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation. It is therefore denied.**

28.    The officers kept McKizzie detained in the Juvenile Detention Center until approximately 5:37 p.m., at which point, the officers forcibly

escorted McKizzie back to the parking garage at the Juvenile Detention Center, putting him back into the squad car, where he remained handcuffed.

**ANSWER: Defendants do not have sufficient information to confirm or deny the allegation. It is therefore denied.**

29.     At approximately 6:03 p.m., the officers took McKizzie out of the squad car, and strapped him to a medical gurney, using two sets of handcuffs rather than one, and strapping multiple layers of polyester webbing over his body.

**30.     ANSWER: The allegations in this paragraphs mischaracterize the facts without necessary context—for that reason they are denied. For example, "strapping multiple layers of polyester webbing over his body" apparently refers to the seat-belt style straps used by paramedics for a patient's safety rather than any device used to restrain and secure an arrestee.**

31.     All the while McKizzie remained compliant, made no effort to break the officers' restraints, continued to ask why he was being detained, and continued to request to be released.

**ANSWER:  Defendants admit that McKizzie did not resist as he was put into the ambulance. Defendants do not have sufficient information to confirm or deny the remaining allegations.**

32.    McKizzie remained in the hospital, still in police custody, for approximately 30 minutes. At approximately 6:30 p.m., the officers wheeled McKizzie out of the hospital, unstrapped him from the gurney, reapplied the handcuffs, put him in the back of a squadcar, and drove him back to the juvenile detention center.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation. It is therefore denied.**

33.    Upon arrival at the juvenile detention center, McKizzie was uncuffed for the first time. The officers left, and shortly after, McKizzie's mother arrived to pick him up.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation. It is therefore denied.**

34.    McKizzie was never charged.

**ANSWER:  Defendants do not have sufficient information to confirm or deny the allegation. It is therefore denied.**

## CLAIMS FOR RELIEF

### COUNT I -- 42 U.S.C. § 1983 & the 4th Amendment to the U.S. Constitution -- Excessive Force/Unreasonable Search & Seizure

*Plaintiff v. Gregory and John Does 1, 2, 3, and 4, Individually and in Their Official* Capacities

35.     The foregoing paragraphs are incorporated by reference as though fully stated herein.

**ANSWER:   Defendants' responses to the foregoing apply to the restated allegations in this paragraph.**

36.     Title 42 U.S.C. § 1983 prohibits, *inter alia,* state actors from depriving persons of any rights, privileges, or immunities secured by the United States Constitution, including the right to be free from excessive force, unreasonable search and seizures, and unlawful arrest as guaranteed by the Fourth Amendment and incorporated through the Fourteenth Amendment. This right was clearly established at the time of Mr. McKizzie's encounter with police on March 24, 2021.

**ANSWER:   To the extent there are legal conclusion in this paragraph, they are not susceptible to denial or confirmation in this pleading. To the extent there are factual allegations, they are denied.**

37.     The right to be free from excessive force during an encounter is clearly established and that right was violated.

**ANSWER:  This is a legal conclusion and is not a susceptible to confirmation or denial. In addition, it misrepresents the correct application of qualified immunity to this case.**

38.     In violation of 42 U.S.C. § 1983, Defendants deprived Mr. McKizzie of his right to be free from excessive force and unreasonable search and seizure when he was unreasonably searched, made the subject of excessive force, and unlawfully arrested, without probable cause or any legal justification.

**ANSWER:  Deny.**

39.     At the time that Defendant Officer Gregory and the other accompanying officers struck Plaintiff in the face and body, Plaintiff posed no threat to the safety of the Defendant officers, no threat to his own safety, and no threat to any others.

**ANSWER:  Deny.**

40.     The Defendants' actions were not objectively reasonable under the Fourth Amendment or for purposes of qualified immunity under the totality of circumstances.

**ANSWER:  Deny.**

41.     At all material times, Defendant Gregory was acting under color of state law, as an agent of Minneapolis, and within the scope of his

employment and authority as a duly-certified law enforcement officer of the City of Minneapolis.

**ANSWER: Admit.**

42.    Defendants, individually and/or through their agents, violated Plaintiffs civil rights under the Fourth Amendment of the United States Constitution and 42 U.S.C.A §1983 by beating Plaintiff, a 17-year old at the time.

**ANSWER: Deny.**

43.    As a  direct and proximate  result of the Defendants'  actions, Mr.  McKizzie  has been injured, suffering physical, mental and emotional pain, discomfort, embarrassment, professional  humiliation, fear, anxiety, apprehension,  sleeplessness, a  generally diminished sense of personal and family safety, outrage, attorney and investigative fees todefend against criminal prosecution, civil attorney fees, and the costs of bringing suit.

**ANSWER: Deny.**

44.    Plaintiff is entitled to recover actual damages, punitive damages, and costs andattorneys' fees.

**ANSWER: Deny.**

45.    Total damages suffered by Mr. McKizzie are in excess of $75,000, to be furtherdetermined at trial.

**ANSWER:  Deny.**

### COUNT II -- 42 U.S.C. §1983 & the 4th Amendment to the U.S. Constitution -- FalseImprisonment/Unlawful Continued Detention

*Plaintiff v. Gregory and John Does 1, 2, 3, and 4, Individually and in Their OfficialCapacities*

46.    Plaintiff realleges the allegations contained in the paragraphs above as if morefully set forth here.

**ANSWER:  Defendants' responses to the foregoing apply to the restated allegations in this paragraph.**

47.    Defendants, individually and/or through their agents, violated Plaintiffs civil rights under the Fourth Amendment of the United States Constitution and 42 U.S.C.A. §1983 by falsely imprisoning him without consent and unnecessarily delayed releasingPlaintiff.

**ANSWER:  Deny.**

48.    Defendant City's failure to train its officers on the Fourth Amendment caused thedeprivation of Plaintiffs right to be free from unreasonable seizures. Plaintiffs false imprisonment was a direct result of order from a supervised Sergeant.

**ANSWER:  Deny.**

49.    The actions of Defendants represented callous indifference to the rights ofPlaintiff.

16

**ANSWER:  Deny.**

50.     As a result of this constitutional violation, Plaintiff suffered damages describedabove.

**ANSWER:  Deny.**

51.     Plaintiff is entitled to recover actual damages, punitive damages, and costs andattorneys' fees.

**ANSWER:  Deny.**

52.     Total damages suffered by Mr. McKizzie are in excess of $75,000, to be furtherdetermined at trial.

**ANSWER:  Deny.**

<u>COUNT</u> III -- <u>42 U.S.C. §1983</u> -- *Monell* **Liability**

*Plaintiff v. City of Minneapolis*

53.     The foregoing paragraphs are incorporated by reference as though fully stated herein.

**ANSWER:  Defendants' responses to the foregoing apply to the restated allegations in this paragraph.**

54.     MPD's Policy Manual provides that the Mayor is "vested with all the powers ofsaid city connected with and incident to the establishment, maintenance, appointment, removal, discipline, control and supervision of its police force, subject to the limitations herein

17

contained and the provisions of the Civil Service chapter of this Charter, and may make all needful rules and regulations for the efficiency and discipline, and  promulgate and enforce general and special orders for the government of the same, and have the care and custody of all public property connected with the Police Department of the city."

**ANSWER:  Deny. The quote appears to be a reference to the Charter, not the Department Manual.**

55.     The Mayor, the City Council, and the Police Chief established and/or approved MPD's written policies and training governing the conduct of MPD officers performing policing functions.

**ANSWER:  Deny. The City Council does not establish MPD policies or training.**

56.     The written policies and training established and/or approved by The Mayor, the City Council, and the Police Chief constitute the official policy of the City and were the moving force behind and caused Plaintiff's injuries.

**ANSWER:  Deny.**

57.     The City, acting by and through its Mayor and/or policymakers, had knowledge of MPD's unconstitutional patterns and practices and knowledge that the same gave rise to a risk of violations of citizens' federal

18

rights.

**ANSWER:  Deny.**

58.    The City, acting by and through its Mayor and/or other policymakers, made a deliberate and/or conscious decision to disregard the known risk of harm that would result from MPD's unconstitutional patterns and practices and was deliberately indifferent to and/or tacitly authorized the same.

**ANSWER:  Deny.**

59.    On or prior to March 24, 2021, Minneapolis, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that failed to provide for the safety or arrestees, detainees, and the like during arrest, including but not limited to the handcuffing and restraint process.

**ANSWER:  Deny.**

60.     On or prior to March 24, 2021, Minneapolis, with deliberate indifference to the rights of arrestees, detainees, and the like, tolerated, permitted, failed to correct, promoted, or ratified a number of customs, patterns, or practices that condoned and required officers to turn a blind eye to and not intervene with the use of excessive force by MPD officers.

**ANSWER:  Deny.**

61.    Total damages suffered by Mr. McKizzie are in excess of $75,000, to be further determined at trial.

**ANSWER:  Deny.**

### COUNT IV -- Common Law Battery

*Plaintiff v. Gregory and John Does 1, 2, 3, and 4, Individually and in Their Official Capacities*

62.    The foregoing paragraphs are incorporated herein by reference.

**ANSWER:  Defendants' responses to the foregoing apply to the restated allegations in this paragraph.**

63.    Defendant Gregory and the John Doe Officers made offensive contact against Plaintiff, without consent or other lawful authority, in violation of his common law right to be free from offensive bodily contact or violation to the dignity and security of his person.

**ANSWER:  Deny.**

64.    Defendant Gregory inflicted damages upon Plaintiff.

**ANSWER:  Deny.**

### COUNT V -- Common Law Battery *(Respondeat Superior)*

*Plaintiff v. City of Minneapolis*

65.    The foregoing paragraphs are incorporated herein by reference.

**ANSWER:  Defendants' responses to the foregoing apply to the restated allegations in this paragraph.**

66.    Defendant Gregory acted in the course and scope of his employment as a Minneapolis police officer.

**ANSWER:  Deny.**

67.    Defendant City of Minneapolis is liable to Plaintiff for the common law tort of battery inflicted upon him by Defendant Gregory.

**ANSWER:  Deny.**

68.    Defendant Gregory inflicted damages upon Plaintiff.

**ANSWER:  Deny.**

## JURY DEMAND

Defendants hereby demand a jury.

## AFFIRMATIVE DEFENSES

1.    Plaintiff's Complaint fails to state a claim upon which relief can be granted.

2.    Plaintiff's injuries and damages, if any, were caused, contributed to, or brought about by the actions of those over whom the City exercises no right of control, and for whose actions the City is not legally responsible.

3.    Allege that they are immune from liability in this action under the provisions of Minn. Stat. §466.03, subd. 5, in that Plaintiff's claims are claims

based upon an act or omission of an officer or employee, exercising due care, in the execution of a valid or invalid statute, charter, ordinance, resolution, or rule.

4.     Allege that they are immune from liability in this action under the provisions of Minn. Stat. §466.03, subd. 6 in that Plaintiff's claims are claims based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused.

5.     Allege that Plaintiff's injuries and damages, if any, were caused, contributed to, or brought about by Plaintiff's own acts or the acts of those over whom these Defendants exercise no right of control and for whose actions Defendants are not legally responsible.

6.     Allege that Defendants have official and qualified immunity from suit because it was not clearly established that their actions violated the law, and they did not act with malice.

7.     Allege that Plaintiff's injuries and damages, if any, were caused, contributed to, or worsened by Plaintiff's failure to mitigate alleged injuries and/or damages.

8.     Allege that Defendants' use of force was privileged under the common law and/or under Minn. Stat. § 609.06 and therefore Defendants are immune.

9.     Plaintiff's claims, as well as, the factual and legal issues alleged in the Complaint are barred, in whole or in part, by the doctrines of res judicata, collateral estoppel, claim preclusion, and issue preclusion.

10.     Plaintiff's claims are barred in whole or in part because he failed to exhaust administrative remedies.

11.     Allege that Plaintiff had knowledge, or in the exercise of reasonable care should have had knowledge, of each of the risks about which Plaintiff complains, and allege that if any risk inhered in the situation that gave rise to the Amended Complaint, then Plaintiff voluntarily assumed such risk.

12.     Allege that the acts upon which the Complaint is made were privileged, were based upon probable cause to believe the Plaintiff committed a criminal offense, were commanded or authorized by law, and were done in a reasonable and lawful manner under the circumstances, such Defendants are immune from liability in this action, and that therefore the City of Minneapolis, if it is vicariously liable for any such acts, is vicariously immune.

13.     Defendant reserves the right to assert any additional affirmative defenses that are discovered through discovery or the investigation of the Plaintiff's claims.

**WHEREFORE**, Defendants pray for an Order of this Court as follows:

1.     Dismissing Plaintiff's Complaint on the merits and with prejudice in its entirety;

2.     Awarding Defendants all reasonable costs, disbursements and attorneys' fees to the fullest extent allowed by law; and

3.     For such other and further relief as this Court deems appropriate.

Dated:  November 4, 2021                    SUSAN L. SEGAL
                                            City Attorney
                                            By

                                            /s/ Brian S. Carter
                                            BRIAN S. CARTER (#390613)
                                            Assistant City Attorney
                                            Room 210, City Hall
                                            350 S. Fifth Street
                                            Minneapolis, MN  55415
                                            (612) 673-2063
                                            brian.carter@minneapolismn.gov

                                            Attorneys for Defendants